IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL FAZIANI,

    Plaintiff,

v.                      No.

SIERRA COUNTY BOARD OF COUNTY COMMISIONERS,
ROXANNA CARDENAS, CHRISTOPHER REES,
CURTIS CHERRY, LEONARD STUFFLEBEAN,

    Defendants.

## COMPLAINT FOR THE RECOVERY OF DAMAGES CAUSED BY THE DEPRIVATION OF CIVIL RIGHTS

Plaintiff brings this complaint for damages caused by the violation of his civil and constitutional rights. Plaintiff files this complaint under the Federal Civil Rights Act, and the Constitution of the United States. Plaintiff also brings claims under the New Mexico Tort Claims Act. In support of this Complaint, Plaintiff alleges the following:

### JURISDICTION AND VENUE

1. Jurisdiction over the subject matter of this action is conferred by 28 U.S.C. § 1331 and 42 U.S.C. §§ 1983 and 1988. Venue is proper as the acts complained of occurred exclusively within Sierra County, New Mexico.

### PARTIES

2. Plaintiff, Michael Faziani, is an individual and former temporary resident of Sierra County, New Mexico.

3. Defendant Sierra County Board of County Commissioners is a governmental entity within the State of New Mexico and a "person" under 43 U.S.C. § 1983. At all times material to this Complaint the Board was the employer of Defendants Roxanna Cardenas, Christopher Rees, Curtis Cherry and Leonard Stufflebean.

4. Roxanna Cardenas at all material times was a detention officer at the Sierra County Detention Facility, (hereinafter "SCDF").

5. Defendant Roxanna Cardenas is sued in her individual capacity.

6. Defendant Cardenas was acting under color of state law and within the scope of her employment at all material times.

7. Defendant Christopher Rees was at all material times a detention officer at SCDF.

8. Defendant Rees is sued in his individual capacity.

9. Defendant Rees was acting under color of state law and within the scope of his employment at all material times.

10. Defendant Stufflebean was at all material times a law enforcement officer with the Truth or Consequences Police Department.

11. Defendant Stufflebean is sued in his individual capacity.

12. Defendant Stufflebean was acting under color of state law and within the scope of his employment at all material times.

13. Defendant Cherry was at all material times the administrator and final policy maker of SCDF.

14. Defendant Cherry is sued in both his individual and official capacities.

15. Defendant Cherry was acting under color of state law and within the scope of his employment at all material times.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

16. Plaintiff Michael Faziani is a middle aged man with a history of bipolar disorder and chronic back pain.

17. In 2012, Plaintiff had traveled to Truth or Consequences, New Mexico to seek the healing effects of the hot spring baths for his chronic back pain.

18. Plaintiff had set up care with a local physician, rented a space in a trailer park, and was living temporarily in Sierra County.

19. On June 3, 2012 Plaintiff was involved in a minor accident where he scraped the side of his car on a McDonalds drive through metal post.

20. Approximately one week later, on or about June 11, 2012, Plaintiff was involved in a much more serious roll over motor vehicle accident.

21. As a result of the accident, Plaintiff's physician prescribed him narcotic pain medication in conjunction with his regularly taken mental health medications.

22. On June 15, 2012 Plaintiff was arrested by Defendant Stufflebean for events associated with the McDonalds drive through accident.

23. Defendant Stufflebean charged Plaintiff with the misdemeanor crimes of failing to timely report the McDonalds accident, and filing a false police report regarding the McDonald's accident.

24. Defendant Stufflebean booked Plaintiff into SCDF.

25. Defendant Stufflebean failed to take Plaintiff before a neutral magistrate within a reasonable time frame as mandatorily required by New Mexico law.

26. Plaintiff remained in custody until July 3, 2013 when he was finally seen by a judge and released.

27. During his time in SCDF Plaintiff was subjected to inhumane conditions of confinement and inadequate medical care.

28. On arrival in SCDF Plaintiff told officials he was suffering from severe back pain and required medications for his bipolar disorder.

29. Plaintiff's booking information makes note of severe back and neck problems and bipolar disorder.

30. Despite all Defendants being placed on notice of Plaintiff's serious medical needs Plaintiff did not receive an adequate medical screening.

31. Defendant Cherry had established a custom, practice and policy of receiving inmates into SCDF without providing an adequate medical screening or classification process.

32. Defendant Cherry knew his jail would receive mentally ill inmates as a matter of routine.

33. Despite this knowledge Defendant Cherry failed to hire the necessary mental health or medical professionals to staff his facility.

34. Defendant Cherry knew his facility did not have medical staff to treat the severely mentally ill when they entered SCDF.

35. Instead of providing professional mental health services to the mentally ill, Defendant Cherry had established a practice and policy of using solitary confinement, (otherwise known as administrative segregation, (ad seg), or the special housing unit, (SHU)), to house those who, like Plaintiff, were severely mentally ill.

36. It is commonly known in the field of corrections and detention facilities, that solitary confinement is particularly toxic to those suffering from severe mental health problems.

37. The standard of care in detention facilities, is to avoid using solitary confinement if at all possible on those inmates diagnosed with bi-polar disorder.

38. The standard of care also requires any inmate with bi polar disorder to be closely monitored by a mental health professional if housed in conditions akin to solitary confinement.

39. Defendant Cherry had established a practice and policy of using untrained detention staff to monitor the solitary confinement or special housing cells.

40. Defendant Cherry had established a practice and policy of using untrained detention staff to administer medications and make medical decisions regarding the administration of medications.

41. Defendant Cherry had established a practice and policy of allowing untrained detention staff to create and edit medical records associated with the administration of medications.

42. Defendant Cherry knew certain detention staff members had substance abuse problems.

43. Defendant Cherry knew his practice and policy regarding the dispensing of narcotic and mental health medications was vulnerable to abuse by addicted or corrupt staff members.

44. Over the years numerous staff members objected to Defendant Cherry's practice and policies regarding medication provision and complained they were not trained

to pass out medications or make medical decisions regarding the provision of medications.

45. Detention staff recently requested training related to the dispensing of medicine, but were told Defendant Board would not authorize the funds to do so.

46. Defendants Board and Cherry had a policy of failing hire medical staff or train detention officers on the appropriate methods of dispensing medications.

47. Defendants Board and Cherry had a policy of allowing inmates who were not mentally capable of refusing medications to do so without seeing a medical professional.

48. These practices and policies, initiated and overseen by Defendant Cherry, were the moving force behind Plaintiff's constitutional violations.

### COUNT I: VIOLATION OF SUBSTANTIVE DUE PROCESS: INHUMANE CONDITIONS OF CONFINEMENT / INADEQUATE MEDICAL CARE FEDERAL AND STATE CONSTITUTIONS

49. Plaintiff restates each of the preceding allegations as it fully stated herein.

50. Plaintiff has a substantive due process right under the Fourteenth Amendment to humane conditions of confinement and adequate medical care.

51. Plaintiff has a similar substantive due process right to humane conditions of confinement and adequate medical care under Article II Section 14 of the New Mexico Constitution.

52. On entering SCDF Plaintiff alerted staff to his need for mental health care and pain medications.

53. Throughout his stay Plaintiff told everyone, including Defendants Cherry, Rees and Cardenas of his need for mental health care and medications for his pain and bi polar disorder.

54. At first Plaintiff was housed in the general population.

55. At first Plaintiff received medications.

56. Without adequate reason, Plaintiff was moved to an isolation cell.

57. As the administrator, Defendant Cherry was personally responsible for the decision to house Plaintiff in isolation.

58. As soon as Plaintiff was moved to solitary confinement his medications were interfered with.

59. Without adequate medications, coupled with the intense pain of his back and neck injury, Plaintiff's mental health quickly deteriorated.

60. Plaintiff begged Defendant Rees for help when he walked by his cell.

61. Defendant Rees would say he was gong to get medical help, but none ever arrived.

62. Defendant Rees, Cardenas and Cherry saw Plaintiff almost daily and watched his physical and mental health deteriorate.

63. Throughout his time in SCDF Plaintiff never saw a medical professional.

64. Plaintiff was confined to his cell for 24 hours per day.

65. Plaintiff begged for a shower and a toothbrush along with his need for medical help.

66. Plaintiff repeatedly complained he had not seen a judge and needed to be released.

67. Defendants Rees, Cardenas and Cherry ignored his requests.

68. Plaintiff's cell became foul smelling and dirty.

69. Such conditions were not unusual in this part of the jail and Defendants Rees, Cardenas and Cherry ignored the situation.

70. Plaintiff's ability to advocate for himself quickly deteriorated.

71. Due to the toxic effects of solitary confinement Plaintiff lost the ability to care for his own hygiene.

72. On June 27, 2012 Plaintiff's cell had become so squalid another inmate was ordered to clean it for him.

73. At this stage Plaintiff had lost the ability to clean his cell.

74. Plaintiff's Cousin contacted the jail regularly and asked Defendant Rees why Plaintiff was there.

75. Plaintiff's Cousin made it clear to Defendant Rees that Plaintiff suffered from severe bi polar disorder and other serious medical conditions that required daily medications.

76. Plaintiff's Cousin asked Defendant Rees if Plaintiff was being given his medications.

77. Defendant Rees refused to answer Plaintiff's Cousin's concerns about the medications.

78. Both Defendant Rees and Cardenas were entrusted with dispensing Plaintiff's medications.

79. Inmates frequently complain they do not receive their medications while in SCDF.

80. Medication logs provided to Plaintiff indicate he received powerful pain medications constantly throughout his stay.

81. Medication logs indicate Plaintiff received Oxycodone four times per day.

82. Other logs indicate Plaintiff was being given Hydrocodone at the same time each day.

83. Without direct supervision from a qualified physician, taking these doses of narcotic pain medication at the same time would be dangerous and life threatening.

84. At various times in the medication logs Plaintiff is recorded as having received medication from staff who were no longer on duty or who had left for the day.

85. Plaintiff does not remember receiving any medications during this time frame but does remember begging for help.

86. Upon information and belief Defendants Rees and Cardenas were stealing Plaintiff's medications.

87. Defendant Cardenas would smuggle narcotic pain medication in a box designed to store breath mints.

88. Recent news accounts indicate Defendant Cardenas was charged criminally for possessing contraband in the jail and using smuggled narcotic pills to trade with favored inmates.

89. Despite these criminal charges Defendant Cardenas still works at SCDF.

90. Upon information and belief, the medication logs provided to Plaintiff have been fabricated or forged in an attempt to conceal a criminal conspiracy.

91. Medical records indicate Plaintiff lost 22 lbs in the 18 days he was incarcerated.

92. Plaintiff's sudden weight loss can be explained by the sudden interruption of his prescribed medications, thereby placing him in a life threatening detoxification.

93. Defendants Rees, Cardenas and Cherry were aware of Plaintiff's need for immediate medical attention.

94. Defendant Rees, Cardenas and Cherry ignored obvious signs of Plaintiff's severe medical condition including weight loss, extreme pain, and extreme anxiety, and failed to provide any medical care.

95. Defendants Rees, Cardenas and Cherry were deliberately indifferent to Plaintiff's immediate medical needs and humane conditions of confinement.

96. On release Plaintiff was treated at a local hospital for severe depression, and suicide ideation. He was prescribed mental health and pain medications and placed on a saline drip until he was stabilized.

97. On his release from SCDF Plaintiff did not have any of the medications he was supposedly receiving while incarcerated.

98. As a result of Defendants' deliberate indifference Plaintiff suffers symptoms associated with post traumatic stress disorder.

99. Defendants Rees, Cardenas and Cherry's failure to provide adequate medical care, and interruption of his medication regime, amounted to deliberate indifference in violation of the Fourteenth Amendment to the United States Constitution and Article II Section 14 of the New Mexico Constitution.

100. Defendants Rees, Cardenas and Cherry knew Plaintiff faced a substantial risk of serious mental or physical harm if his conditions of confinement did not meet contemporary standards of decency.

101. These Defendants acted with deliberate indifference to this risk.

102. By placing Plaintiff, a person known to have bi polar disorder, into a solitary confinement cell and withholding medical care and medications, Defendants

violated contemporary standards of decency and subjected him to inhumane conditions of confinement.

103. This indifference proximately caused Plaintiff damages including emotional distress, pain and suffering, and an exacerbation of his mental illness.

## COUNT II: VIOLATION OF PROCEDURAL DUE PROCESS
### (Defendant Cherry)

104. Plaintiff restates each of the preceding allegations as if fully stated herein.

105. Inmates in SCDF generally have access to recreation, visitation, use of the phone, mail, programming services such as group therapy and religious activities, and commissary.

106. Plaintiff was placed into solitary confinement.

107. While in solitary Plaintiff had no access to the ordinary services provided to inmates in the jail.

108. Plaintiff was not afforded a hearing before being placed in solitary confinement.

109. While in solitary confinement Plaintiff did not have access to the basic programming and services received by other inmates in the facility.

110. While in solitary confinement Plaintiff was refused telephone calls, mail, visitation, recreation, access to group therapy sessions and commissary.

111. While in solitary confinement Plaintiff's mental health deteriorated to the point he could not advocate for himself.

112. Plaintiff had a due process right to a periodic review of his classification.

113. In placing Plaintiff in solitary confinement without affording him a hearing, or periodic classification review, Defendant Cherry denied Plaintiff procedural due process of law as guaranteed by the Fourteenth Amendment.

### COUNT III: CUSTOM AND POLICY OF VIOLATING CONSTITUTIONAL RIGHTS

114. Plaintiff states each of the preceding allegations as if fully stated herein.

115. Defendant Board has delegated the responsibilities of running SCDF to Defendant Cherry.

116. Defendant Cherry is therefore the final policy maker responsible for the hiring training and supervision of SCDF employees.

117. Defendant Cherry's policies therefore become the customs and policies of the County.

118. Defendant Cherry has created a custom and policy of housing the mentally ill in segregation or solitary confinement.

119. Defendant Cherry has created a policy of isolating mental health patients when they become too difficult or expensive to handle, in general population.

120. Rather than arranging psychiatric care for mentally ill inmates, Defendant Cherry had a policy of using untrained detention staff to administer complicated psychiatric medications.

121. Defendant Cherry's policy allowed staff to steal or interfere with inmate medications including Plaintiff's.

122. The policies, customs, decisions, and practices of Defendant Cherry have created a climate within SCDF whereby the mentally ill are deprived of adequate medical care and humane conditions of incarceration.

123. The policies, customs, decisions, and practices of Defendant Cherry have created a climate within SCDF whereby the mentally ill are vulnerable to victimization by detention staff.

124. There is a causal connection between Defendants Cherry's policies and the violation of Plaintiff's constitutional rights, which amounts to deliberate indifference.

### COUNT IV: VIOLATION OF FOURTH AND FOURTEENTH AMENDMENT: FAILURE TO BRING PLAINTIFF TO NEUTRAL MAGISTRATE (Defendant Stufflebean)

125. Plaintiff restates each of the preceding allegations as if fully stated herein.

126. On June 15, 2012, Plaintiff was arrested by Defendant Stufflebean on a misdemeanor warrant.

127. Plaintiff has a Fourth and Fourteenth Amendment right to be brought before a neutral magistrate upon arrest without unreasonable delay.

128. Plaintiff has similar rights under the New Mexico Constitution and statutory law.

129. Defendant Stufflebean failed to meet his constitutional and statutory duty to bring Plaintiff before the court without unreasonable delay.

130. After approximately 18 days Plaintiff was brought before the court to address the warrant.

131.   This delay violated both the United States and New Mexico Constitutions as well as the statutes and procedural rules of New Mexico.

132.   Rule 5-608 N.M. R. Crim. P. Dist. Ct. states that a warrant shall command that the person be arrested and brought before the court.

133.   Rule 5-610 N.M. R. Crim. P. Dist. Ct. and Rule 8-205 N.M. R. Crim. P. Mun. Ct. command that the police officer, after arresting an individual on a warrant, to bring the arrested person before the court "without unnecessary delay."

134.   Similarly, NMSA § 31-1-4 states: "When a warrant is issued in a criminal action, it shall be directed to a law enforcement officer, and the defendant named in the warrant shall, upon arrest, be brought by the officer before the court without unnecessary delay."

135.   Defendant Stufflebean knew it was his responsibility to bring Plaintiff before the court without unreasonable delay once Plaintiff was arrested.

136.   Defendant Stufflebean did not fulfill his responsibility.

137.   Defendant Stufflebean's conduct was unreasonable under a Fourth Amendment analysis.

138.   Defendant Stufflebean's conduct violated mandatory statutory and procedural law designed to protect the liberty interests of Plaintiff, and as such violated due process principles protected by the Fourteenth Amendment of the United States Constitution and its New Mexico counterpart.

139.   The actions and failure to act of Defendant Stufflebean proximately caused Plaintiff's injuries.

140. Defendant's actions were intentional, willful and wanton.

## COUNT V: STATE TORT FALSE IMPRISONMENT

141. Plaintiff restates each of the preceding allegations as if fully stated herein.

142. Plaintiff was held without being taken to a neutral magistrate forthwith.

143. A delay of 18 days before seeing a magistrate in unreasonable and constitutes false imprisonment.

144. Plaintiff was placed in solitary confinement in violation of his constitutional rights.

145. Plaintiff's prolonged detention in solitary confinement was not justified or privileged under state law and therefore constituted false imprisonment.

146. Defendant Cherry is responsible to Plaintiff under the doctrine of respondeat superior for the conduct of his employees.

147. The actions of Defendants Cherry and Stufflebean in failing to bring Plaintiff to court in a reasonable timeframe were willful, wanton, and in gross and reckless disregard for Plaintiff's rights.

148. The actions of Defendants Cherry and Stufflebean caused Plaintiff damages including mental and emotional harm, paint and suffering and physical injury.

## COUNT VI: STATE TORTS NEGLIGENT MAINTENANCE OF A BUILDING AND NEGLIGENT OPERATION OF A MEDICAL FACILITY

149. Plaintiff restates each of the preceding allegations as if fully stated herein.

150. Defendant Cherry knew he was entrusted with the detention of large numbers of mentally ill inmates.

151. Defendant Cherry took on the role of a medical provider when he entrusted his staff to make decisions regarding medications.

152. Defendant Cherry failed to invest enough money into SCDF to adequately care for mentally ill inmates.

153. Defendants owed Plaintiff a duty of care not to house him, and other inmates like him, in a manner likely to cause injury.

154. In operating SCDF, Defendant Cherry chose to house plaintiff in solitary confinement rather than in a medical facility capable of treating his illness.

155. By subjecting Plaintiff to solitary confinement in a dirty and squalid cell, Defendant Cherry breached his duty to house Plaintiff in a reasonably prudent manner.

156. Such conduct amounts to negligence in running both a jail and a medical facility.

157. Plaintiff suffered injuries as a direct result of Defendant's negligent conduct.

158. As a result of the foregoing, Plaintiff has suffered damages and injuries including but not limited to physical injuries, pain and suffering, and severe psychological and emotional distress.

## **JURY DEMAND**

154. Plaintiff hereby demands a trial by jury on all counts so triable.

WHEREFORE, Plaintiff requests judgment as follows:

1. Compensatory damages in an as yet undetermined amount, jointly and severally against all Defendants, including damages for attorney's fees and emotional harm.

2. Punitive damages in an as yet undetermined amount severally against the individually named Defendants.

3. Reasonable costs and attorney's fees incurred in bringing this action.

4. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

 /s/ Matthew E. Coyte
Matthew E. Coyte
Attorney for Plaintiff
201 Third Street NW, Suite 1920
Albuquerque, NM 87102
(505) 244-3030